ELMER N. HAMILTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamilton v. Commissioner
Docket No. 22873-92
United States Tax Court
T.C. Memo 1994-633; 1994 Tax Ct. Memo LEXIS 658; 68 T.C.M. (CCH) 1512; December 22, 1994, Filed *658 Decision will be entitled for respondent. Elmer N. Hamilton, pro se. For respondent: Alan R. Peregoy. DAWSON, ARMEN
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1989 in the amount of $ 15,670.62. The only issue for decision is whether the Transfer Refund distribution received by petitioner in 1989 from the Maryland State Teachers' Retirement System *659 qualifies for 10-year forward averaging under section 402(e)(1). The resolution of this issue turns on whether the Transfer Refund distribution constitutes a lump sum distribution within the meaning of section 402(e)(4)(A). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioner resided in Catonsville, Maryland, at the time his petition was filed with the Court. Petitioner is a guidance counselor. He was employed by the Baltimore County, Maryland, Board of Education (the Board of Education) in 1989 and remained so employed at least through the time that this case was submitted for decision. As an employee of the Board of Education, petitioner was a member of the Teachers' Retirement System of the State of Maryland (the Retirement System) until he elected to transfer to the Teachers' Pension System of the State of Maryland (the Pension System) effective December 1, 1989. The Retirement System is a qualified defined benefit plan under section 401(a). The Retirement system requires mandatory nondeductible employee contributions. The Pension System is also a qualified defined benefit plan under section 401(a) but generally does not require *660 mandatory nondeductible employee contributions. The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems. The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under section 501(a). In 1989, petitioner received a Transfer Refund distribution (the Transfer Refund) in the amount of $ 107,903.31 on account of his election to transfer from the Retirement System to the Pension System. The $ 107,903.31 Transfer Refund consisted of $ 16,202.07 in previously taxed contributions made by petitioner and $ 91,701.24 of earnings. The earnings on petitioner's contributions constitute the taxable portion of the Transfer Refund. Federal income tax in the amount of $ 12,179 was withheld from petitioner's Transfer Refund. Petitioner received $ 95,724.31, the net amount (i.e., $ 107,903.31 less $ 12,179) by a check dated December 31, 1989, from the Maryland State Retirement System. Petitioner endorsed this check below a printed notice that provided, in part, as follows: By endorsement hereon I understand that I have irrevocably transferred my membership from the *661 Retirement System of the State of Maryland to the Pension System of the State of Maryland and that my benefits will be less under my new plan than under my old plan.
When petitioner transferred from the Retirement System to the Pension System, he had attained the age of 61. If petitioner had not transferred to the Pension System but had remained a member of the Retirement System, he would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity, at age 60. He would not have been entitled to receive a Transfer Refund because a Transfer Refund is payable only as a result of transferring from the Retirement System to the Pension System. As a result of transferring from the Retirement System to the Pension System, petitioner became, and presently is, a member of the Pension System. As a member of the Pension System, petitioner will be entitled to receive a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System. [2] However, because petitioner received the Transfer Refund on account of transferring from the *662 Retirement System to the Pension System, petitioner's monthly annuity will be less than the monthly annuity he would have received if he had not transferred but had retired under the Retirement System. On his Federal income tax return (Form 1040) for 1989, petitioner reported the taxable portion of the Transfer Refund as ordinary income and computed income tax by reference to the tax rate schedule applicable to single individuals. [3]
*663 On an amended Federal income tax return (Form 1040X), petitioner treated the Transfer Refund as a lump sum distribution and elected 10-year forward averaging under section 402(e)(1). In the notice of deficiency respondent determined that petitioner did not qualify for 10-year forward averaging because the Transfer Refund did not constitute a lump sum distribution within the meaning of section 402(e)(4)(A). OPINION As a general rule, a distribution from a qualified plan, such as the Retirement System, is taxed to the recipient in the year distributed under the rules relating to annuities. Sec. 402(a)(1); see sec. 72. However, section 402(e)(1) provides for a preferential 10-year forward averaging method of computing the tax on such distributions. The parties agree that petitioner is entitled to this preferential method of computing the tax on the Transfer Refund if the Transfer Refund constitutes a "lump sum distribution" within the meaning of section 402(e)(4)(A). [4]
*664 A lump sum distribution, for purposes of section 402, is defined in section 402(e)(4)(A) as follows: (A) Lump Sum Distribution. -- For purposes of this section * * *, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient -- (i) on account of the employee's death, (ii) after the employee attains age 59 1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled * * * from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 * * *. For purposes of this subsection, the balance to the credit of the employee does not include the accumulated deductible employee contributions under the plan (within the meaning of section 72(o)(5)). [Emphasis added.]
There is no dispute that the distribution in issue was received by petitioner after he attained the age of 59 1/2, nor is there any dispute that the trust forming a part of the Retirement System is exempt from tax under section 501. Moreover, there is no dispute that the distribution *665 was made within a single taxable year. Therefore, the only issue in dispute is whether petitioner received the "balance to the credit" when he received the Transfer Refund. [5]
In addressing the "balance to the credit" issue, it is helpful to begin by consulting Maryland law relating to an employee's transfer from the Retirement System to the Pension System. See generally Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984) (discussing the Retirement System and the Pension System). In 1979, the Maryland State legislature (the legislature) adopted legislation, effective January 1, 1980, which created the Pension System and enabled participants in the Retirement System to voluntarily transfer to the Pension System. *666 Md. Code Ann., art. 73B, secs. 83(8), 86B(6), 89(1)(e), 141, 142 (1988). In order to transfer to the Pension Plan, a Retirement System participant (a participant) was obliged to waive "all benefits which might insure to him under the retirement system." Md. Code Ann., art. 73B, sec. 142(2) (1988). A participant who elected to transfer to the Pension System received a distribution consisting of at least a part of the participant's accumulated contributions and earnings thereon (a transfer refund). [6] Md. Code Ann., art. 73B, sec. 89(1)(e) (1988). Depending upon the salary a participant had been earning, the participant could obtain a transfer refund consisting of all of the contributions and earnings thereon. Id. The balance of any accumulated contributions not distributed as part of a transfer refund would be transferred to the Pension System. Id. Generally, transfer refunds did not include contributions made by the State of Maryland or the earnings thereon. However, when a participant transferred to the Pension System, the participant's years of creditable service would also be transferred to the Pension System from the Retirement System. Md. Code Ann., art. 73B, *667 sec. 144(4) (1988). Turning now to the issue before us, respondent contends that the Transfer Refund did not constitute a lump sum distribution within the meaning of section 402(e)(4)(A) because petitioner did not receive the "balance to the credit" when he transferred from the Retirement System to the Pension System. In this regard, respondent relies on the fact that petitioner's years of creditable service under the Retirement System carried over to the Pension System, see Md. Code Ann., art. 73B, sec. 144(4) (1988), and that those years of service will serve to increase the monthly annuity benefit to which petitioner will be entitled when he ultimately retires. By contrast, petitioners contend that petitioner received the entire account balance from the Retirement System when he received the Transfer Refund. [7] Therefore, *668 petitioners conclude, the "balance to the credit" requirement of section 402(e)(4)(A) was satisfied and the taxable portion of the Transfer Refund qualifies for 10-year forward averaging. We begin our analysis with section 402(e)(4)(C). That section provides, in relevant part, as follows: (C) Aggregation of Certain Trusts and Plans. -- For purposes of determining the balance to the credit of an employee under subparagraph (A) -- (i) all trusts which are part of a plan shall be treated as a single trust, all pension plans maintained by the employer shall be treated as a single *669 plan * * * [Emphasis added.]
During the year in issue, the State of Maryland maintained both the Retirement System, in which petitioner participated until May 1, 1989, and the Pension System, to which petitioner transferred on that date. Accordingly, in order to decide whether petitioner received the "balance to the credit", we must treat the Retirement System and the Pension System as a single pension plan. Sec. 402(e)(4)(C). This Court has previously addressed scenarios comparable to the present one involving Federal employees covered by the Civil Service Retirement System (CSRS). In those scenarios, taxpayers argued that they were entitled to 10-year (or 5-year) forward averaging when, in lieu of an anticipated monthly annuity, they elected to receive an initial single payment followed by a reduced monthly annuity. [8] In such cases, the Court held that where a monthly annuity received by a taxpayer was based on the taxpayer's average salary and years of service, the initial single payment was not a lump sum distribution within the meaning of section 402(e)(4)(A). E.g., Green v. Commissioner, T.C. Memo. 1994-340; Kirkland v. Commissioner, T.C. Memo. 1994-220; *670 Twombly v. Commissioner, T.C. Memo. 1991-416. Under Maryland law, petitioner's annuity under the Pension System will be calculated by taking into account petitioner's "average final compensation" and petitioner's years of "creditable service". Md. Code Ann., art. 73B, sec. 145(2) (1988). In Green v. Commissioner,supra, the Court distinguished between taxpayers who elect to receive an initial single payment followed by a reduced monthly annuity, and taxpayers who forfeit their right to a monthly annuity in exchange for an initial single payment in a substantial amount. Because section *671 402(e)(4)(C) requires that we treat the Retirement System and the Pension System as a single pension plan, we conclude that, by transferring from the Retirement System to the Pension System, petitioner, like the taxpayer in Green v. Commissioner, supra, did not forfeit his right to a future monthly annuity, but simply elected to receive an initial single payment to be followed by a reduced monthly annuity. Effectively, petitioner's transfer allowed him to receive the "balance to the credit" in two parts, an initial single payment to be followed by a reduced monthly annuity, based on all of his years of creditable service and on his salary during those years. See Green v. Commissioner, supra.[9]
*672 In view of the foregoing, we hold that the Transfer Refund did not constitute a lump sum distribution within the meaning of section 402(e)(4)(A) because petitioner did not receive the "balance to the credit" when he transferred from the Retirement System to the Pension System. Accordingly, petitioner is not entitled to compute the tax on the Transfer Refund using the 10- year forward averaging method set forth in section 402(e)(1). Respondent is sustained. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner became a member of the Retirement System in 1970 and therefore had been a member of the Retirement System for nearly 20 years at the time of the Transfer Refund.↩
3. Petitioner reported the taxable portion of the Transfer Refund on his 1989 income tax return consistent with the Form 1099-R ("Total Distributions From Profit-Sharing, Retirement Plans, Individual Retirement Arrangements, Insurance Contracts, Etc.") issued to him by the Maryland State Retirement Agency.↩
4. The Tax Reform Act of 1986 replaced the 10-year forward averaging method with a 5-year forward averaging method for lump sum amounts distributed after Dec. 31, 1986, in taxable years ending after such date. Tax Reform Act of 1986, Pub. L. 99-514 sec. 1122(a)(2); (h)(1), 100 Stat. 2085, 2466, 2470. However, Tax Reform Act of 1986, secs. 1122(h)(5) and 1124 provide transitional rules under which lump sum distributions made after Dec. 31, 1986, will nevertheless continue to qualify, under certain limited circumstances, for the more generous 10-year forward averaging method; 100 Stat. 2085, 2471, 2475. Because of his age, petitioner falls within the scope of the transitional rules, provided, of course, that the Transfer Refund qualifies as a lump sum distribution.↩
5. In this case, had petitioner not been over 59 1/2, we would not even reach the issue of whether he received the "balance to the credit", because petitioner would have failed to satisfy the threshold requirements of section 402(e)(4)(A).↩
6. As previously stated, the $ 107,903.31 Transfer Refund received by petitioner consisted of $ 16,202.07 in previously taxed contributions of petitioner and $ 91,701.24 of earnings thereon.↩
7. Respondent appears to implicitly concede that the Transfer Refund included all of petitioner's contributions and the earnings thereon. Cf. Wheeler v. Commissioner, T.C. Memo. 1993-561↩ (a member of the Retirement System did not receive the "balance to the credit" upon receiving a Transfer Refund; a portion of the member's contributions was transferred from the Retirement System to the Pension System).
8. In 1986 Congress authorized certain Federal employees covered by CSRS to elect to receive an "alternative form of annuity". 5 U.S.C. sec. 8343a (1988). Those who elected to receive the "alternative form of annuity" received an initial (and substantial) single payment and a reduced annuity paid periodically thereafter. Id.↩
9. We note that in Sedlacek v. Commissioner, T.C. Memo. 1982-318, a case in which the Court held that a taxpayer was not entitled to an IRA deduction because the taxpayer had been an active participant in a pension plan during the same year, the Court suggested, in dicta, that the taxpayer, who received a distribution upon separation from the service of his employer, would have been entitled to the preferential 10-year averaging method if he had so elected, despite the fact that had he returned to the employ of the same employer, he would have been credited with his prior years of service for purposes of calculating his benefits under the pension plan. We conclude that the dicta in Sedlacek v. Commissioner, supra↩, does not compel a conclusion different from the one that we have reached.